RECEIVED
SEP 2 9 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

RUBY LEE CALHOUN, ET AL.   CIV. ACT. NO. 80-1422

-vs-

NATCHITOCHES PARISH SCHOOL
BOARD, ET AL.   JUDGE DRELL

## MEMORANDUM RULING AND ORDER
## DECLARING UNITARY STATUS

Before the court is the motion of the Natchitoches Parish School Board ("Board") for approval of its proposed teacher recruiting plan and for judgment declaring unitary status. Doc. 106. For the reasons detailed below, the court finds that the motion should be GRANTED subject to the other provisions of this order.

The above-captioned school desegregation case was instituted in September of 1980 by the filing of a complaint by Plaintiffs, alleging violations of the Equal Protection Clause of the United States Constitution. U.S. CONST., Amend. XIV; Doc. 1 (paper docket sheet at p. 3). In the thirty-seven (37) years of litigation that followed, this court has granted unitary status incrementally as to all but two (2) Green factors: student assignment and faculty assignment.[1] The portion of the Board's first motion for unitary status (Doc. 34) pertaining to student and faculty assignment remains pending and has been re-urged for our consideration. (Docs. 85, 86, 148).

---

[1] Judgment of June 18, 2012 granting unitary status as to the Green factors of extracurricular activities, facilities and transportation. Doc. 71. Judgment of December 5, 2012 granting unitary status as to the Green factor of staff assignment. Doc. 75. Green v. County School Bd. of New Kent County, Va., 391 U.S. 430, 435 (1968) (identifying five facets of school operation which must addressed in desegregation inquiries: faculty, staff, transportation, extracurricular activities and facilities). See, also, Freeman v. Pitts, 503 U.S. 467, 489 (1992) (a federal court hearing a desegregation case has discretion to withdraw its supervision and control incrementally or partially).

1

After many in-person and telephonic hearings and conferences regarding the outstanding Green factors, we find that the issue of complete unitary status and final dismissal properly before the court for disposition at this time.

I. **Faculty Assignment**

The Board's motion asks for a declaration of unitary status as to the Green factor of faculty assignments. In response to the court's judgments granting unitary status as to three of five Green factors, but preserving the issue of teacher assignment for further proceedings, the Board filed a motion for final approval of its teacher recruitment plan. (Doc. 106). The motion also re-urges unitary status and dismissal as to this factor. Id.

Plaintiffs' recent "Status Report" raises several concerns relative to faculty assignment. (Doc. 147). Plaintiffs cite (1) the absence of "...brochures, marketing materials, and website materials specifically designed to attract African American teachers; (2) that "[o]nly 23% of teachers in the Natchitoches Parish School System are African American, which is far below the...40% set forth in the original desegregation order entered in this case (63% of the students in the school system are African American)"; (3) that "[f]orty-six (46) of the fifty-five (55) long term substitutes employed by the Natchitoches Parish School System are African American..."and are subject to elimination from the budget during the 2017-18 fiscal year, which would reduce the number of African-American teachers in the system below 20%; (4) that the number of African American teachers at Natchitoches Central High School is "abysmally low"; and (5) that the number of African American teachers at Natchitoches Magnet School that have been moved to Parks Elementary "in toto" is "extremely low" as evidence that unitary status should be withheld regarding the issue of faculty assignment. Id. at p. 3 of 4.

2

The Board's "Response to Plaintiffs' Status Report" argues that these five (5) "concerns" raised at the special school board and public meetings held on June 20, 2017 in Natchitoches are addressed in full by the work of the Board to recruit African American teachers, leaving no doubt that unitary status is now appropriate. (Doc. 147 at p. 1).

This court's duty as custodian of this desegregation case is to ensure that the Board complies in good faith with the desegregation orders in place, working to eliminate the vestiges of past *de jure* discrimination in all practicable ways. The duty of the Board continues after the initial desegregation orders, requiring continual effort toward a unitary school system. Ross v. Houston Independent School District, 699 F.2d 218, 255 (5th Cir. 1983) citing Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 15 (1971). The court's goal is to return control of the school system to local authorities "at the earliest practicable date." Freeman, 503 U.S. at 490. A declaration of unitary status is a pronouncement by the court that a school district "done all it could" to remedy the vestiges of *de jure* segregation. It is not, as Plaintiffs' "Status Report" suggests, a declaration of perfection. Anderson v. School Bd. of Madison County, 517 F.3d 292 n.1 (5th Cir. 2008).

The Board's brief addresses each of the concerns raised by Plaintiffs and the court is in agreement with the argument and evidence presented by the Board. An overarching theme among the Board's rebuttal is the absence of any objections to the Board's motion for unitary status at an earlier date. Recalling that the Board's original motion for unitary status was filed in 2011 and renewed in 2015, the court agrees that objections, styled as a "Status Report" are inexplicably late. Nevertheless, we address them below.

Plaintiffs' Status Report alleges that the Board's failure to produce "brochures, marketing material, and website materials designed to attract African American teachers" is evidence that

3

unitary status should be withheld at this time. (Doc. 147 at ¶ 7). As cited by the Board, the teacher recruiting plan currently in use was approved by Dr. Percy Bates ("Dr. Bates"), the court-appointed expert and drew no contemporaneous objections from Plaintiffs. Moreover, the Board points out that Plaintiffs were invited to collaborate with the Board on the brochure's content, but declined to participate. Finally, the Board cites its ongoing and concentrated recruitment at historically black colleges, implemented as a result of our other orders, as evidence of its overall commitment to attracting African American teachers. The court agrees and finds this particular objection vague, especially in light of the late stage of this litigation and the specificity of the recruitment plan outlined in the Board's 2015 filing.[2]

Plaintiffs' Status Report next cites the disparity between the percentage of African American students allegedly enrolled in Natchitoches Parish schools (63%) and the percentage of African American teachers in Natchitoches Parish schools (23%) as evidence of the Board's failure to fulfill its obligations in pursuit of unitary status. (Doc. 147 at ¶ 8). Plaintiffs point out that the original desegregation order entered in this case prescribed that Natchitoches Parish schools shall employ faculty in the Singleton[3] ratio of 60% (Caucasian) to 40% (African American). (Doc. 34-3 at pp. 19-20). Jurisprudence following Singleton affirms the Board's argument that Singleton's strict requirements (including ratios such as that announced in our 1981 order) do not apply "in the absence of desegregation related reductions." Fort Bend Independent School District v. City of Stafford, 651 F.2d 1133, 1138-39 (5th Cir. 1981) (rehearsing the many rulings instructing that Singleton does not apply outside of faculty and staff consolidations brought on by desegregation);

---

[2] Motion for Approval of Recruiting Plan at Doc. 106; Recruitment Plan attached at Doc. 106-1.
[3] Singleton v. Jackson Municipal Separate School Dist., 419 F.2d 1211, 1217-18 (5th Cir. 1969) rev'd in part on other grounds sub nom. Carter v. West Feliciana Parish School Bd., 396 U.S. 290 (1970) (faculty, to include teachers and teacher-aides, working directly with children at schools, shall be so assigned that the racial composition of the faculty does not indicate a school's designation as for the particular benefit of African American or Caucasian students).

(Pickens v. Okolona Municipal Separate School District, 527 F.2d 358, 359-60 (5th Cir. 1976) citing Smith v. Concordia Parish School Board, 393 F.Supp. 1101, 1102 (W.D. La. 1975) (describing the elements necessary for employment of Singleton criteria). Accordingly, though the court finds that striving toward increased African American faculty representation among faculty is definitely part of the Board's ongoing duty, it is not measured by the Singleton standards once employed in this case. We again note that we are heartened by the recruitment work being done toward this objective and note with particularity that this recruitment program is conducted by an African-American member of the Board staff, who has shown clear competence and understanding of the task.

Plaintiffs' Status Report complains that 46 of 55 long-term substitute teachers employed by the Natchitoches Parish school system are African American and in danger of being eliminated as a result of proposed budget cuts in the 2017-18 school year, reducing the number of African American teachers to less than 20%. (Doc. 147 at ¶ 11). The Board responds by disputing these figures, arguing that the actual percentage of African American teachers in Natchitoches Parish is 28% and noting that none of the long-term substitute positions were included in its calculation of this percentage, as they are considered part-time employees. The court is aware that the Board faces a serious budget shortfall and that the elimination of these positions is one of several cuts aimed at reducing overall expenses in light of that shortfall. Plaintiffs present no evidence that the Board's proposed cuts are racially motivated. Moreover, we agree with the Board's observation that, when financially able, the Board offered these positions to predominately African American candidates and, additionally, such candidates were able to use these entry level positions to work toward certified, full-time teaching positions. Our view is that this effort was a help to the

recruitment efforts and, when revenues permit, should be increased again with continued emphasis on moving these part-time employees toward full-time qualification.

Plaintiffs' Status Report next alleges an "abysmally low" number of African American teachers at Natchitoches Central High School and that an "extremely low" number of African American teachers have been moved from Natchitoches Magnet School to Parks Elementary School. (Doc. 147 at ¶¶ 14, 15). The Board observes that, though more African American teachers at both schools is desirable, the ratio of African American teachers at those schools since 2013 has remained within the goal range of +/-15% of the district-wide ratio. (Doc. 148 at p. 21). Jurisprudence clearly instructs that our focus must be the overall efforts of the Board to eliminate the vestiges of segregation. The lack of perfect racial balance in one or more schools is not an appropriate basis, in and of itself, to deny unitary status. Anderson, 517 F.3d at 298; Ross, 699 F.2d at 225-26; Fort Bend, 651 F.2d at 1158. Plaintiffs offer no evidence of bad faith or of any connection to this shortfall of African American teachers and any vestiges of *de jure* segregation. Moreover, Plaintiffs fail to rebut the recruitment work proposed and in process by Plaintiffs as pretextual, ineffective, unfulfilled or otherwise inadequate. Again, at this stage of litigation, objections must be specific and bring collaboration to this ongoing process.

Paragraphs 9, 10 and 16 address complaints regarding administrative positions at the central office of the school system and Natchitoches Central High School. (Doc. 147 at ¶¶ 9, 10, 16). The Board correctly observes that the court relinquished its oversight as to the Green factor of staff assignments in its 2012 order. (Doc. 75). Thus, the Board also correctly notes that this desegregation case is no longer the proper forum for this issue. Any individual who feels they were subjected to discrimination based on race must pursue individualized legal remedies under

Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, *et seq.* Given this finding, we do not agree that these issues present impediments to unitary status in this case.

**II.     Student Assignment**

Plaintiffs' Status Report asserts that the Board's failure to offer 7th and 8th grade students residing within the City of Natchitoches and currently attending Cloutierville Elementary and Junior High School the opportunity to voluntarily transfer to Frankie Ray Johnson Middle School is improper. (Doc. 147 at ¶ 4). The court finds this argument vague, in that it fails to allege why transfer to Frankie Ray Johnson Middle School might be appropriate for some 7th and 8th grade students. Moreover, this argument may become moot if, as proposed by the Board, cost-saving measures are enacted causing the closure of Cloutierville Elementary and Junior High School.[4]

Plaintiffs allege that the Board has failed to carry its burden of demonstrating "that the closure of Parks Elementary School and the reassignment of the students to the adjacent L.P. Vaughn Elementary School has been beneficial to the students formerly at Parks Elementary." (Doc. 147 at ¶ 13). Plaintiffs correctly refer to the obligations taken on by the Board in the September 29, 2016 Consent Order. (Doc. 141). Our review of the record indicates that the Board failed to file the requisite report to the court, accounting for increased or decreased standardized test scores after the first year of temporary consolidation of Parks Elementary and L.P. Vaughn Elementary. (Id. at ¶ 3(v)). Delays for the filing of this report are set forth below.

Plaintiffs further allege that the Board failed in an affirmative duty to vote to maintain an equal racial balance at Natchitoches Magnet School after Natchitoches Parish schools are granted unitary status by this court. (Doc. 147 at ¶ 18). Racial balance at any one school is not dispositive

---

[4] The Board's proposed closure of Cloutierville Elementary and Junior High School is under review at this time. We cannot fail to note, however, that Cloutierville, once a thriving town, has lost much of its population, and that many of the students there are bussed from Natchitoches to artificially maintain a viable school population.

7

of unitary status. Indeed, racial imbalance resulting from *de jure* segregation may be cured, but racial imbalance arising from demographic factors may take its place. In such an instance, racial imbalance does not present an impediment to unitary status. Parents Involved in Community Schools v. Seattle School District No. 1, 551 U.S. 701, 749-50 (2007) (racial imbalance is not a constitutional violation unto itself); Anderson, 517 F.3d 292, 299 (2008) citing Freeman, 503 U.S. at 494 and Cavalier v. Caddo Parish School Board, 403 F.3d 246, 260 (5th Cir. 2005). The court also notes that the Board is under no affirmative duty to undertake the specific vote complained of by Plaintiffs and, as such, any failure to do so would not constitute grounds for withholding of unitary status.

### III. Good Faith and Other Concerns

Plaintiffs' Status Report contends that the Board fails to demonstrate that it would act in good faith to maintain a unitary system, once unitary status is granted. (Doc. 147 at ¶ 17). We do not agree. On the contrary, the court finds that the Board's conduct thus far demonstrates good faith and a prioritization of unitary status and its precepts. Review of the record in this case reveals that this litigation has been protracted and has required diligence from the Board in creating and operating and unitary school system. Plaintiffs offer no evidence to support their ominous suggestion. Again, at this stage of litigation, objections raised should be substantive and well-supported. Moreover, we echo the sentiment of Board in questioning why, after such a lengthy period with no objections, Plaintiffs allege bad faith now. In any event, our finding is contrary and is supported by the record.

The remainder of items raised by Plaintiffs' Status Report are not relevant to the two (2) remaining Green factors of faculty assignment and student assignment before the court today. (Doc. 147 at ¶¶ 1, 2, 3, 5, 6, 12). For that reason, we do not address them in this ruling.

8

## IV. CONCLUSION

While we do find, allow and grant unitary status for the Natchitoches school system, such grants are never without concern for the future. Even a Board which, on its best days, has worked diligently to satisfy the Green factors is well capable of reverting to old, unhealthy, patterns of conducting school business, including a descent back into institutionalized racism. The record of this case reflects that racial division on this particular school board has persisted from time to time, despite the fact that this litigation has been pending since 1980, longer than thirty-five years. We have observed for the Board before, and reiterate here, that the Board exists for one purpose and one purpose only…to deliver quality education to the children in its care, in a non-discriminatory atmosphere. Petty squabbling and vestiges of old patterns of inter-Board behavior are simply unacceptable in this day and time.

For this reason, and being aware of this Board's history reflected in its voting record on various issues, and although we grant unitary status, we do find it is appropriate to provide for a period of transition before this case is dismissed in its entirety. Accordingly, the court shall retain jurisdiction over this case for a period of slightly more than three (3) years, until December 31, 2020 for the purpose of monitoring the school district's efforts to maintain the progress it has made to faithfully and fully comply with federal law and this order. In this particular regard, the court reiterates and incorporates the requirements and conditions of its September 29, 2016 Consent Order (Doc. 141) during the monitoring period.

During the three-year monitoring period, any party is free to file appropriate non-frivolous motions, provided that all attempts to resolve any disputed issue must first be addressed through good faith negotiation for at least thirty (30) days, or until a declared impasse is reached, whichever is sooner.

After December 31, 2020, the District may file a motion to dismiss the case, and any existing party may, upon receipt of such motion, with sixty (60) days of such filing request a show cause hearing as to why, based upon applicable law, the case should not be finally dismissed. The record of these proceedings reveals a single other motion to be decided. Considering this ruling and order, that "Motion for Approval of Recruiting Plan and for Final Order Regarding Teacher Assignment[,]" (Doc. 106) is hereby GRANTED.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 29th day of September, 2017.

**DEE D. DRELL, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**